**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**ARIELLE B.,**

**Plaintiff,**

                                                    **Case No. 1:20-cv-001766-TPK**

        **v.**

**COMMISSIONER OF SOCIAL**                **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

### OPINION AND ORDER

        Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on October 13, 2020, denied Plaintiff's application for supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 10), and the Commissioner has filed a similar motion (Doc. 11).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the defendant Commissioner.

### I.  BACKGROUND

        On January 25, 2018, Plaintiff protectively filed her application for benefits, alleging that she became disabled on January 1, 2009.  After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on December 30, 2019.  Both Plaintiff and a vocational expert, Dale Pasculli, testified at that hearing.

        The Administrative Law Judge issued an unfavorable decision on January 29, 2020.  He first concluded that Plaintiff had not engaged in substantial gainful activity since her application date.  Next, he found that Plaintiff suffered from severe impairments including history of head injury/subarachnoid and subdural hemorrhage, history of concussion/post-concussive syndrome, and migraines.  He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

        Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels but that she could tolerate only a moderate amount of noise.  He also determined that she had no past relevant work.  With her limitations, however, she could perform jobs like housekeeping cleaner, routing clerk, and photocopying machine operator, and that these jobs existed in significant numbers in the national

economy.  The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in her motion for judgment, raises three issues.  She argues: (1) that the ALJ erred by not finding a severe mental impairment; (2) that the Appeals Council erred by rejecting evidence of her mental hospitalization; and (3) that the ALJ erred by not including a limitation of bright lights in his residual functional capacity finding.

## II.  THE KEY EVIDENCE

The Court will begin its review of the evidence by summarizing the testimony from the administrative hearing.  It will then provide a summary of the most important medical records.

### A.  The Hearing Testimony

Plaintiff, who was 31 years old as of the date of the hearing, first testified that she lived in a ground floor apartment with a family friend.  She left school in eleventh grade but had been in regular classes.  She had last worked in 2008 but earned less that $6,000.00 that year.  She said that she was unable to work due to issues related to head trauma (caused by a domestic violence incident), including problems with memory, focus, and comprehension.  Plaintiff also testified to suffering from depression and anxiety as well as migraine headaches triggered, at first, by bright lights or loud noises, but more recently by both those and other random events.  Additionally, she had occasional back pain as well as shortness of breath.  She believed she could stand or walk for 20 minutes and sit for an hour.  Lastly, she said she felt uncomfortable if she were around more than six people in an enclosed space.

The vocational expert, Ms. Pasculli, was asked questions about someone with Plaintiff's vocational profile who could perform a full range of light work with some postural restrictions ans who was limited to simple, unskilled, routine tasks in an environment with only a moderate level of noise.  The person could also have frequent interaction with others.  In response, she said that such a person could be a cleaner, routing clerk, or photocopying machine operator.  She also gave numbers for those jobs as they existed in the national economy.  If, however, the person were off task 20% of the time or would have two or three unexcused absences from work per month, that person could not do those or any other jobs.  The same would be true for someone who required occasional redirection from a supervisor.

### B.  The Relevant Treatment Records

Because Plaintiff's first two contentions address her mental impairments, the Court will begin this summary with the mental health treatment records.

A note from BestSelf behavioral Health dated June 22, 2017 shows that Plaintiff had been diagnosed with both bipolar disorder and PTSD.  She had begun treatment with that provider in

2015 and was also treated for alcohol and tobacco use disorders.  Plaintiff had sought treatment inconsistently over that time period and had been prescribed medications, including Seroquel, but was discharged from treatment due to poor medication compliance and poor attendance.  A diagnostic review from Spectrum Human Services completed in 2018 showed diagnoses of both bipolar and generalized anxiety disorder as well as a history of suicide attempts (in 2009 and 2015).  Plaintiff had been taking amitriptyline and Trazadone and reported becoming irritable when around other people as well as experiencing high amounts of anxiety, stress, and depression.  Her intake assessment indicated that she described her mood as sad and that she reported numerous psychologically-based symptoms.  The notes show that she was to be prescribed an SSRI and a mood stabilizer to treat symptoms of PTSD and any underlying mood disorder.  During treatment, she continued to report symptoms like depression, fatigue, feelings of hopelessness and helplessness, hypervigilance, intrusive memories, poor concentration, insomnia, and nightmares.

An October, 2018 progress note from BH Multi-Services showed that Plaintiff was doing well at the time, having received significant benefit from her medications.  She did not report any significant symptoms, and she was to be continued on the same treatment regimen.  Prior notes from that provider were much the same although she reported reaching a plateau in her PTSD symptoms in August, 2018, so the dosage of one of her medications was increased.  Her symptoms increased again in 2019 when she stopped taking her medication.  A number of psychologically-based symptoms were also noted in a mental health evaluation done in December, 2019, but that provider was not able to address any functional limitations caused by those symptoms.

There were a number of additional records submitted to the Appeals Council.  They include a discharge summary from BryLin Hospitals showing that, beginning on February 26, 2020, Plaintiff was hospitalized for a week due to depression and suicidal thoughts.  Those symptoms were apparently brought on by the first anniversary of her mother's death.  She had also stopped taking her medications a month before.  During the course of her hospitalization, she was given medication and counseling and was improved upon discharge, with a diagnosis of major depression, recurrent, severe, and rule out bipolar disorder, mixed, moderate to severe. The evidence submitted to the Appeals Council also included a statement from a counselor dated 2015 indicating that Plaintiff had multiple symptoms due to PTSD.

## C.  Expert Opinions

Dr. Rosenberg performed a neurologic evaluation on May 17, 2018.  He noted that Plaintiff had suffered a head injury in October of the previous year and had a significant intercranial bleed.  She reported short-term memory loss since the incident as well as daily headaches and dizziness.  Dr. Rosenberg said that she should avoid both bright lights and sound because they exacerbated her headaches.  (Tr. 673-76).

The same day, Plaintiff saw Dr. Ransom for a psychiatric examination.  Dr. Ransom

reported that Plaintiff had been hospitalized in the past for treatment of bipolar disorder and had also had intermittent outpatient treatment.  She was receiving both counseling and medication at that time.  Plaintiff told Dr. Ransom that her bipolar disorder was in remission and that she had no symptoms.  Her mental status exam was essentially normal, and her concentration and memory were intact.  Dr. Ransom believed that Plaintiff could deal appropriately with both simple and complex directions and instructions, could relate adequately to others, and could sustain an ordinary routine and regular attendance at work.  (Tr. 677-80).

Finally, there are evaluations from state agency reviewers.  They concluded that, from a physical standpoint, Plaintiff had only environmental limitations which consisted of the need to avoid even moderate exposure to noise, and that she had no severe mental impairment.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

## A.  Severe Mental Impairment

As her first claim of error, Plaintiff asserts that the ALJ erred by not finding that she suffered from any severe mental impairments.  She argues that any inconsistency in seeking treatment can be explained by her bipolar disorder and that the ALJ improperly "cherry picked" the record by emphasizing only those portions showing normal exams and few symptoms.  In response, the Commissioner argues that the ALJ correctly interpreted the record and that his finding on this issue is supported by substantial evidence.

The ALJ analyzed Plaintiff's mental impairments under the "paragraph B" criteria set out in the Listing of Impairments.  He found that Plaintiff had only mild limitations in the areas of remembering and applying information, interacting with others, concentrating, persisting, or maintaining pace, and managing oneself - findings which lead to the conclusion that a mental impairment is nonsevere.  As support for these findings, the ALJ reviewed the various treatment notes and acknowledged that Plaintiff had multiple psychological diagnoses.  He read the notes as showing both that she improved with treatment and that her compliance with treatment was inconsistent.  Further, he observed that the mental status exam done by Dr. Ransom was normal and that she stated that Plaintiff had no mental limitations.  Additionally, the majority of the treatment notes showed a normal affect and a euthymic mood.  Lastly, Plaintiff did not appear to have significant limitations in her activities of daily living.  For all of these reasons, the ALJ determined that any mental impairments documented in the record were not severe.  (Tr. 128-30).

The law in this area is well-settled.  An impairment, in order to qualify as "severe" for purposes of Social Security law, need not be debilitating in and of itself. Rather, any medically determinable impairment which "significantly limits [a claimant's] physical or mental ability to do basic work activities" is "severe" under 20 C.F.R. § 404.1520(c). As this Court has said, "[s]tep two's 'severity' requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)." *See Pulos v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 352, 358 (W.D.N.Y. 2018).

Although the severe impairment requirement is not a high hurdle to clear, in this case, using the familiar substantial evidence standard, the Court finds that the ALJ's decision must stand.  Here, as the ALJ correctly observed, the majority of Plaintiff's mental status exams did not reveal any significant abnormalities.  Further, the treatment record, as outlined above, showed that when treated with medication (and when she took it as prescribed), Plaintiff 's symptoms largely abated.  When she saw Dr. Ransom, she reported no difficulties, and Dr. Ransom found no functional limitations.  In fact, there is no medical evidence in the record which directly addresses the way in which Plaintiff's diagnosed impairments might have affected her ability to function in the workplace.  Since there is substantial support in the record for the conclusion that none of her mental impairments satisfied the severity requirements of the Social Security Act, the Court is required to affirm the ALJ's decision on this issue.

## B.  Appeals Council Action

Plaintiff next argues that the Appeals Council did not properly consider the evidence of her February, 2020 hospitalization.  The Appeals Council concluded that this evidence would not likely have changed the ALJ's decision, but Plaintiff contends that the evidence contradicts the ALJ's finding that she did not suffer from a severe mental disorder.  According to the Commissioner, however, this evidence did not relate to how well Plaintiff was functioning during the relevant time period, which ended on January 29, 2020, and therefore need not have been considered by the Appeals Council.

Plaintiff has correctly identified the legal standard to be applied here, which is whether the newly-discovered evidence creates a reasonable probability that the outcome of the case would have been different had it been considered by the ALJ.  *See, e.g., Suttles v. Colvin*, 654 Fed.Appx. 44, 47 (2d Cir. June 30, 2016).  Although Plaintiff makes much of the fact that her hospitalization occurred shortly after the ALJ made his decision and that it stemmed from the mental impairments which had been diagnosed prior to then, the records clearly show that the precipitating incident happened after that time and that Plaintiff's condition also worsened because she stopped taking her medications.  The Court does not believe that, given the ALJ's rationale for determining that Plaintiff did not have any severe mental impairments, this evidence would reasonably have caused him to rethink that conclusion.  Rather, the evidence is consistent with the determination that Plaintiff's condition was episodic and that her symptoms were generally well-controlled with proper medication.  Consequently, the Court finds no error in the Appeals Council's determination on this issue.

### C.  Additional Functional Limitation

Plaintiff's last contention is that the ALJ improperly rejected Dr. Rosenberg's conclusion that she could not tolerate exposure to bright lights because of her migraine headache disorder. In particular, she argues that the ALJ did not explain why he did not accept this portion of Dr. Rosenberg's opinion, especially because it was consistent with other medical evidence showing that she had light sensitivity and with her testimony at the administrative hearing.  The Commissioner's position is that evidence of Plaintiff's ability to function in environments which included bright lights, such as shopping, caring for a pet, regularly attending church**,** and using public transportation, supported the ALJ's decision not to adopt Dr. Rosenberg's opinion in full.

The ALJ provided this explanation for how he evaluated Dr. Rosenberg's opinion.  First, he characterized Dr. Rosenberg's conclusion that both bright lights and sounds exacerbated Plaintiff's headaches as "rather vague."  (Tr. 135).  Then, citing to more recent evidence including Plaintiff's testimony and her intermittent use of prescribed medication and her continued abuse of substances, he determined that there was not much support for any greater functional limitations and that Dr. Rosenberg's opinion was only "somewhat persuasive."  *Id*. He also found the opinion of the state agency reviewer, Dr. Koenig, to be somewhat persuasive. As noted above, that opinion contained no limitation on exposure to bright lights.  Although the ALJ did not explicitly reject that portion of Dr. Rosenberg's opinion relating to bright lights, it is clear from his residual functional capacity finding that he did not accept it.  The question then

becomes whether the record, and the evidence relied on by the ALJ, support that conclusion.

As this Court has said, "[a]s to the ALJ's evaluation of opinions offered by consultative examiners, '[t]he factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.'" *White v. Saul*, 414 F. Supp. 3d 377, 383 (W.D.N.Y. 2019), *quoting Andrew L. v. Berryhill*, 2019 WL 1081460, at *4 (N.D.N.Y. Mar. 7, 2019). The key factors are, of course, consistency and supportability. *See Jaleesa H. v. Comm'r of Social Security*, 580 F.Supp.3d 1 (W.D.N.Y. 2022). Although the ALJ could have articulated his reasoning process more clearly here, he did consider both of these factors in evaluating Dr. Rosenberg's opinion, finding that it was not entirely consistent with later evidence and that it did not have much support from the record. The ALJ had some basis for preferring the conclusions of the state agency physician to those of Dr. Rosenberg, and resolving these types of conflicts in the medical evidence is ordinarily the province of the ALJ. For all of these reasons, the Court finds no merit in Plaintiff's third claim of error.

## V. CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 10), **GRANTS** the Commissioner's motion (Doc. 11), and **DIRECTS** the Clerk to enter judgment in favor of the defendant Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**